UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BETTY MASON ARNOLD, ET AL. | CIVIL ACTION NO. 11-0009 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| NATIONAL CASUALTY CO., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are Defendants' Motion for Partial Summary Judgment on Liability (Record Document 45) and Plaintiffs' Motion to Dismiss the Defendants' Motion for Partial Summary Judgment and Sanctions (Record Document 51). For the reasons set forth below, both motions are **DENIED**.

## BACKGROUND[1]

On November 23, 2010, at approximately 6:30 p.m., a three vehicle accident occurred on U.S. Interstate 20 East in Bossier Parish, Louisiana involving a 2003 GMC Envoy operated by Stella Jean Godley ("Godley"), a 2011 Freightline Tractor-Trailer owned by Western Express, Inc. and operated by Willie Henry Gammage ("Gammage"), and a 2007 Honda Civic operated by Rebecca Greene ("Greene"). Betty Mason Arnold ("Arnold"), Claude Allen Newsome ("Newsome"), and Gloria Lewis Craig ("Craig") were guest passengers in Godley's 2003 GMC Envoy.

### I.    The Arnold Lawsuit.

---

[1]Defendants' Motion for Partial Summary Judgment on Liability presents a legal issue. The parties do not dispute the facts for purposes of the motion. Accordingly, the Court has drawn the background section of the instant ruling from the parties' statements of material facts. See Record Documents 45-1 & 53-1.

Arnold, individually; Robert Eugene Lansdale ("Lansdale"), as Curator of Newsome; and Godley, as Curatrix of Craig, filed suit in Bossier Parish on December 2, 2010 for personal injuries sustained in the aforementioned accident.  Gammage; Western Express, Inc., as the employer of Gammage; and National Casualty Company, as the liability insurer of Gammage and Western Express, Inc., were named as defendants.  Plaintiffs alleged that the accident was caused by the fault of Gammage.  The Arnold lawsuit was removed to federal court in January 2011.  Gammage answered the petition.  He denied liability and alleged that the accident was caused by the fault of Godley and/or Greene.

## II.    The Godley Lawsuit.

In August 2011, Godley filed suit on her own behalf in Bossier Parish for personal injuries as a result of the accident and named as defendants Greene; Shelter Mutual Insurance Company, as the automobile liability insurer of Greene; Gammage; Western Express, Inc.; and National Casualty Company.  In her petition for damages, Godley alleged that the accident was caused by the fault of Greene and/or Gammage.[2]  Both Greene and Gammage answered the Godley lawsuit.  Greene alleged the accident was caused by the fault of Godley and Gammage.  Gammage alleged that the accident was caused by the fault of Godley and Greene.

## III.   The Greene Lawsuit.

On November 22, 2011, Greene filed a separate suit in Webster Parish for personal injuries as a result of the accident, naming as defendants Godley; State Farm Mutual

---

[2]In September 2011, Shelter Insurance Company, as subrogee of Danny Greene, filed suit against Gammage in Bossier Parish for property damages sustained to the Greene vehicle as a result of the accident.  The Godley lawsuit and the Shelter Insurance Company subrogation suit were consolidated in January 2012.

Automobile Insurance Company, as the automobile liability insurer of Godley; Gammage;

Western Express, Inc.; and National Casualty Company.  In her lawsuit, Greene alleges

that the accident was caused by the fault of Godley and/or Gammage.  Godley and State

Farm Mutual Automobile Insurance Company answered and alleged that the accident was

caused by Gammage and Greene.[3]  Gammage answered, alleging the fault of Greene and

Godley as the cause of the accident.  The Greene lawsuit is still pending.[4]

## IV.    The Godley Trial.

The Godley and Shelter suits were tried in Bossier Parish before a jury on July

15-19, 2013.  Godley, Greene and Gammage were all represented by counsel at the trial.

The following witnesses testified as to liability:  Godley; Greene; Gammage; Kelly

Adamson, accident reconstruction expert on behalf of Gammage; Danny Phillips, accident

reconstruction expert on behalf of Godley; Ennis Oliver; Brian Gates; Gerald Tate; and

Trooper Jeffery Walker.  Numerous exhibits were also introduced into evidence regarding

the issue of liability, including statements made to Trooper Jeffery Walker; deposition

testimony; expert reports; photographs of the vehicles; diagrams; and an Accident

Recreation Animation DVD.

After the week long trial, the jury rendered a verdict finding that Gammage, Greene

and Godley all were at fault in causing the accident.  The jury assessed the percentages

of fault to each of the drivers as follows:  Gammage - 45%; Greene - 20%; and Godley -

35%.  No appeals were filed.  The jury's verdict became a final judgment on October 29,

---

[3]Godley and State Farm Mutual Automobile Insurance Company also filed a cross claim, reconventional demand, and third party demand.

[4]Defendants have filed a similar *res judicata* motion in Webster Parish.

2013.

Arnold; Lansdale, as Curator of Newsome; and Godley, *in her capacity* as Curatrix of Craig, were not present at the Godley trial.  They were not represented by counsel and they were not subpoenaed to testify.

## LAW AND ANALYSIS

I.      **Plaintiffs' Motion to Dismiss the Defendants' Motion for Partial Summary Judgment and Sanctions.**

Plaintiffs move to dismiss Defendants' Motion for Partial Summary Judgment on the grounds that it was filed approximately 58 days after the dispositive motion deadline.  See Record Document 51.  They further note that the Motion for Partial Summary Judgment was filed without Defendants seeking an extension of time and/or leave of court.  See id.

Defendants oppose the Motion to Dismiss, arguing there was good cause for the late filing.  See Record Document 62.  More specifically, Defendants contend that since the Godley judgment did not become valid and final under Louisiana law until October 29, 2013, any motion for summary judgment asserting *res judicata* prior to that date would have been premature.  See id.

The Amended Scheduling Order (Record Document 44) in this matter set the dispositive motion deadline for September 16, 2013.  Defendants' Motion for Partial Summary Judgment was not filed until November 13, 2013.  The motion is untimely on its face.

Under Rule 16(b), this Court must enter a scheduling order.  See F.R.C.P. 16(b). The purpose of such order is "to assist in the speedy and efficient resolution of cases." Argo v. Woods, No. 09-40730, 2010 WL 3522047, **2 (5th Cir. Sept. 10, 2010).  The order

"limits the time litigants may file motions."  Id.  Once in place, "the scheduling order may only be modified by leave of court upon a showing of good cause."  Id., citing  F.R.C.P. 16(b).  The good cause standard calls for "a persuasive reason why the dates originally set by the scheduling order for the filing of dispositive motions could not 'reasonably be met despite the diligence of the party seeking the extension.'" Id., citing F.R.C.P. 16(b) advisory committee's note (1983).

Here, Defendants never requested leave to amend the scheduling order deadline for dispositive motions.  However, it is within this Court's discretion to construe Defendants' Motion for Partial Summary Judgment as a motion requesting leave to amend the scheduling order.  Defendants explained in their motion that the Godley judgment did not become valid and final until October 29, 2013, well after the September 16, 2013 dispositive motion deadline.   While the preferred procedure would have been for Defendants to seek leave of court or an extension of time prior to the dispositive motion deadline, the Court finds there is good cause to allow the filing of the Motion for Partial Summary Judgment raising the legal issue of *res judicata*.  Accordingly, Plaintiffs' Motion to Dismiss the Defendants' Motion for Partial Summary Judgment and Sanctions is **DENIED**.

II.   **Defendants' Motion for Partial Summary Judgment on Liability (Record Document 45).**

   A.   **Partial Summary Judgment Standard.**

   Rule 56(a) provides, in pertinent part:

   Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added);[5] see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).[6]  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case."  Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000).  Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial.  See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

## B.    *Res Judicata*.

Defendants submit that the state court judgment with respect to the issue of liability is *res judicata* for any other litigation involving the parties involved in the November 23, 2010 accident.  They further contend that all elements of *res judicata* are met and that a finding of *res judicata* with respect to the issue of liability is mandated by Louisiana law.

---

[5]The Advisory Committee Notes reflect that subsection (a) was amended in 2010 "to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense" and "the common phrase 'partial summary judgment'" was added.

[6]The Court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the Court's analysis.  F.R.C.P. 56(a) and Advisory Committee Notes.

Defendants "stress[] that **<u>Stella Godfrey</u>** is a named plaintiff in the instant litigation and is

the named plaintiff relative to the judgment which is the basis of *res judicata* in this matter."

Record Document 45-2 at 2-3.

The parties agree that Louisiana Revised Statute 13:4231 governs.  Section 4231

provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive
> between the same parties, except on appeal or other direct review, to the
> following extent:
>
> (1)    If the judgment is in favor of the plaintiff, all causes of action existing
> at the time of final judgment arising out of the transaction or
> occurrence that is the subject matter of the litigation are extinguished
> and merged in the judgment.
>
> (2)    If the judgment is in favor of the defendant, all causes of action
> existing at the time of final judgment arising out of the transaction or
> occurrence that is the subject matter of the litigation are extinguished
> and the judgment bars a subsequent action on those causes of action.
>
> (3)    A judgment in favor of either the plaintiff or the defendant is
> conclusive, in any subsequent action between them, with respect to
> any issue actually litigated and determined if its determination was
> essential to that judgment.

La. R.S. 13:4231.  After the 1990 amendment to the statute, "the chief inquiry is whether

the second action asserts a cause of action which arises out of the transaction or

occurrence that was the subject matter of the first action."   <u>Burguieres v. Pollingue</u>,

2002-1385 (La. 2/25/03), 843 So. 2d 1049, 1053.  However, this is not the only inquiry

required. <u>See id.</u>

Under Section 4231, "a second action is precluded when all of the following are

satisfied:  (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same;

(4) the cause or causes of action asserted in the second suit existed at the time of final

judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation."  Id.  The parties agree that the first, second, fourth, and fifth requirements are satisfied in this matter.   Thus, the resolution of this motion hinges upon the third requirement.

"The third requirement of *res judicata* is that the parties in both suits are the same." Id. at 1053-1054.  There must be "identity of parties" to invoke the doctrine of *res judicata*, thereby precluding a subsequent suit.  Id. at 1055.  The intention of this element is not to require the parties to have the same physical identity, but rather that the parties appear in the same capacities in both suits.  See id.  The Burguieres Court further explained:

> In Louisiana prior to the 1990 amendment, it was clearly understood that *res judicata* applied only when both parties appeared before the court in the same capacity.  This requirement was consistent with Planiol's explanation of Article 1351 of the Code Napoleon:
>
>> Is it necessary now to enter into the long explanations which are traditional here, in order to observe that the identity of the parties in the second case, which is necessary in order that the exception of *res judicata* may be used, does not mean the material identity of persons, but identity of capacity or quality? *Thus a tutor, after having lost a case brought in the name of his ward, may recommence it in his own name, without being subject to the defense of res judicata because he is not acting in the same capacity; it is not the same person who is pleading.*
>
> 2 Planiol, Trait Elementaire De Droit Civil, No. 54A(4), 36 n. 30 (Louisiana State Law Institute trans., 11th ed.1939) (emphasis added).
>
> Similarly, federal courts have recognized that *res judicata* does not apply when the parties appear in different capacities.  The Restatement (Second) of Judgments states:
>
>> A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of *res judicata* in a subsequent action in

> which he appears in another capacity.

> Restatement (Second) of Judgments § 36(2) (1982). This principle is imposed to "safeguard the integrity of . . . representative functions." Restatement (Second) of Judgments § 36 cmt. a (1982).

> Thus, in both the common law and the civil law, in order for a second suit to be barred by the doctrine of *res judicata*, the parties must appear in the same capacities in both suits. Although not explicitly stated in the amended statute, we find the requirement in La. R.S. 13:4231 that the parties be the same in order for a second suit to be precluded by operation of *res judicata* retains this "identity of capacity" component. That is, under La. R.S. 13:4231 the parties are the same when they appear in the same capacities in both suits.

Id. at 1055 (internal citations omitted).

In the Godley lawsuit, Godley appeared in her individual capacity as a plaintiff. In the Arnold lawsuit before this Court, Godley appears in a representative capacity as Curatrix of Craig. See La. C.C. Art. 4566 ("the relationship between interdict and curator is the same as that between minor and tutor"). Godley is appearing in different capacities in the two cases. See Burguieres, 843 So.2d at 1055. As observed in Burguieres, "a tutor, after having lost a case brought in the name of his ward, may recommence it in his own name, without being subject to the defense of res judicata because he is not acting in the same capacity." Id. Such is the rule because "it is not the same person who is pleading." Id. This rule is equally applicable to the instant matter, as the same person is not pleading in the Godley and Arnold lawsuits.

In the Godley lawsuit in state court, the jury was tasked with assessing the fault of all those potentially negligent, including Godley because she was one of the drivers. Conversely, the jury in the instant matter will not be called to assess the fault of Godley *appearing in her representative capacity on behalf of Craig*, as Craig was a guest

passenger.  Thus, it does not appear that Godley, in her individual capacity, and Godley, in her representative capacity as Curatrix of Craig, share the same litigation status.  This change in status distinguishes the instant matter from <u>Myers v. National Union Fire Ins. Co. of Louisiana</u>, 2011-0751, 2011-1326 (La.App. 4 Cir. 4/4/10), 90 So.3d 522, a case relied heavily upon by Defendants.  <u>See</u> Record Document 61 at 9.  Godley as an individual and Godley as Curatrix do not share the same litigation status with regard to liability, the issue specifically litigated.  Godley can be assessed fault individually.  Godley can not be assessed fault in her representative capacity.  Accordingly, based on the foregoing analysis, this Court finds that *res judicata* does not bar the instant action.  Defendants' Motion for Partial Summary Judgment is **DENIED**.

## CONCLUSION

The Court finds that good cause existed for Defendants' untimely Motion for Partial Summary Judgment and that *res judicata* does not bar the instant action.  Accordingly, Defendants' Motion for Partial Summary Judgment on Liability (Record Document 45) and Plaintiffs' Motion to Dismiss the Defendants' Motion for Partial Summary Judgment and Sanctions (Record Document 51) are **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 6th day of January, 2014.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE